IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TOMAS MIKO,<br>    Plaintiff,<br><br>              v.<br><br>REPRESENTATIVE VERNON JONES, *in his individual and official capacities*,<br>    Defendant. | Civil Action No.<br>1:20-cv-02147-SDG |

**OPINION AND ORDER**

This matter is before the Court following an evidentiary hearing on Plaintiff Tomas Miko's damages resulting from a default judgment against Defendant Vernon Jones. The Court incorporates by reference its statement of facts as set out in the February 17, 2022 Order granting Miko's motion for default judgment.[1] For purposes of this Order, it is sufficient to note that Jones, then a Georgia state representative, blocked Miko, his constituent, from Jones's Facebook pages after a sharp exchange of political speech between them. Miko asserted a claim under 42 U.S.C. § 1983 to vindicate the resulting violation of his First Amendment rights, which Jones admitted by virtue of his default. The Court entered judgment against

---

1   ECF 29, at 1–4.

Jones on February 17, 2022, and, on March 14, 2022, it held an evidentiary hearing on Miko's damages.

Between his motion for default judgment and the damages hearing, Miko requested nominal damages; presumed damages ranging between $500 and $5,000; actual damages ranging between $3,000 and $5,000, including all applicable damages for emotional distress; and attorneys' fees and costs. Miko's counsel waived any request for punitive damages during the damages hearing. The Court addresses each remaining category of requested damages and fees.

I.  **Nominal Damages**

The Court previously concluded that Miko is entitled to nominal damages.[2] Such damages are appropriately awarded on default judgment for a constitutional violation. *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 800 (2021); *Slicker v. Jackson*, 215 F.3d 1225, 1231 (11th Cir. 2000) ("We have held unambiguously that a plaintiff whose constitutional rights are violated is entitled to nominal damages even if he suffered no compensable injury."); *see also Slicker*, 215 F.3d at 1230–33. However, nominal damages merely signify a party's vindication in court and are "awarded by default until the plaintiff establishes entitlement to some other form of

---

[2]  *Id.* at 15.

damages, such as compensatory or statutory damages." *Uzuegbunam*, 141 S. Ct. at 800. Because Miko has established his entitlement to compensatory damages as detailed below, the Court need not award nominal damages here. *Id.*; *see also Furman v. Warden*, 827 F. App'x 927, 935 (11th Cir. 2020) (citations omitted) ("[A] plea for compensatory damages or for general damages[ ] includes nominal damages: the greater includes the lesser.").

## II.   Compensatory Damages

Compensatory damages are "mandatory" upon a finding of liability. *Smith v. Wade*, 461 U.S. 30, 52 (1982) (noting that by contrast, punitive damages are discretionary). Compensatory damages in a Section 1983 suit must be "based on actual injury caused by the defendant rather than on the 'abstract value' of the constitutional rights that may have been violated." *Slicker*, 215 F.3d at 1230 (citations omitted) (determining that a jury could award compensatory damages for pain and suffering without proof of medical bills, missed work, or lost income); *accord Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299 (1986) (citation omitted). Miko's presumed damages (*i.e.*, those compensatory damages tied to the violation of his First Amendment rights) and actual damages (*e.g.*, compensatory damages for his emotional pain and suffering) are awarded in the amount of $8,000.

### A.  Presumed Damages

Miko is plainly entitled to presumed damages. *Slicker*, 215 F.3d at 1230. During the damages hearing, Miko clarified that he requests between $500 and $5,000 in presumed damages for the violation of his First Amendment rights consistent with settlements his counsel has obtained in other cases involving social media blocking. Miko further offered two reasons why an award at the higher end of that range is warranted: (1) the COVID-19 pandemic created conditions in which the Georgia General Assembly was not in session, constituents could not readily communicate with their legislators, and social media platforms like Facebook provided the only feasible forum for constituents to engage with their legislators; and (2) Miko's heritage as an immigrant to the United States informs his political view, so the immigration policies Jones then deliberated "came very close to [Miko's] heart" and went "far beyond just a general political interest of his."

Here, Miko has demonstrated an interest in communicating with Jones, his elected representative, and that Jones's Facebook accounts were the best (and possibly the only) vehicle for that communication. The Court recognizes Miko's exercise of his First Amendment rights and lauds his engagement with the political process, but those rights and that engagement are no more or less

privileged than that of any other American. The Court knows of no legal authority (and Miko offers none) supporting the idea that he is entitled to greater presumed damages based on his demonstrated personal connection to immigration issues or any other topic. However, the COVID-19 global pandemic presented heretofore unique circumstances that made constituents' in-person, telephonic, or other non-social media communication with their elected officials temporarily impracticable. Those circumstances were exacerbated by the uncontroverted fact that Jones regularly used his online presence to voice his political opinions and initially exchange barbs with Miko before blocking him from those fora. The Court is thus persuaded that Jones's restriction of Miko's access to Jones's Facebook pages under these exceptional facts and circumstances was an especially severe curtailment of Miko's First Amendment rights. The Court awards Miko $5,000 in presumed damages for this unique violation of his rights.

### B.     Actual Damages

During the damages hearing, Miko requested $3,000 to $5,000 in actual damages. In addition to actual damages based on monetary loss or physical pain and suffering, the plaintiff in a Section 1983 action may be awarded actual compensatory damages for any demonstrated mental and emotional distress, impairment of reputation, and personal humiliation. *Slicker*, 215 F.3d at 1230

(citing *Wright v. Sheppard*, 919 F.2d 665, 669 (11th Cir. 1990) (holding that non-physical injuries such as humiliation, emotional distress, and mental anguish and suffering are all within the ambit of compensatory damages under Section 1983)). Such damages "need not be proven with a high degree of specificity" and "may be inferred from the circumstances as well as proved by the testimony." *Ferrill v. The Parker Group, Inc.*, 168 F.3d 468, 476 (11th Cir. 1999).

Miko did not claim a monetary loss or physical pain and suffering. Indeed, Miko conceded that he neither sought help from a counselor, nor incurred any medical or other expense associated with medical or psychological treatment. Nevertheless, he testified that, upon getting "blocked" from Jones's Facebook pages, he became anxious, stigmatized, lost his ability to socialize with others, and suffered significant emotional distress. In his counsel's words, Miko suffered a "moderate-level impact" on his emotional wellbeing. Thus, a correspondingly "moderate-level" award of actual damages is in order. The Court finds that $3,000 in actual damages for Miko's mental and emotional pain and suffering is appropriate.

The Court finds that a combined award of $8,000 in compensatory damages compensates for Miko's injuries and is sufficient to deter Jones and other public officials from engaging in similar misconduct—particularly during any future

public health emergency that renders other public fora for political speech ineffectual or unfeasible.[3]

## III. Attorneys' Fees and Costs

Miko also seeks $37,678 in attorneys' fees, supported by declarations from his legal counsel that detail each task performed and their hourly rates.[4] Having entered judgment against Jones and in favor of Miko, the Court finds that Miko is entitled to recover reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and costs of litigation pursuant to Fed. R. Civ. P. 54(d)(1) and 28 U.S.C. § 1920. *Hensley v. Eckerhart*, 461 U.S. 424, 429 ("[A] prevailing plaintiff should ordinarily recover an attorney's fee [under 42 U.S.C. § 1988] unless special circumstances would render such an award unjust.") (cleaned up); *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441–42 (1987) ("Section 1920 enumerates expenses that a federal court may tax as a cost under the discretionary authority found in Rule 54(d).").

"Determining a reasonable attorney's fee is a matter that is committed to the sound discretion of a trial judge." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 558

---

[3] This sum is consistent with Miko's request for compensatory damages in his motion for default judgment. ECF 27-2, at 19 ("Plaintiff submits that the appropriate damages for this prolonged campaign of viewpoint discrimination by a public official for an eight-month period is $8,000.").

[4] *Id.* at 21.

(2010) (cleaned up). In the Eleventh Circuit, "the starting point in any determination for an objective estimate of the value of a lawyer's services is to multiply hours reasonably expended by a reasonable hourly rate," commonly referred to as the "lodestar" approach. *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). "[T]here is a 'strong presumption' that the lodestar is the reasonable sum the attorneys deserve." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (per curiam) (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565–66 (1986)).

Miko accounts for the requested $37,678 in fees and costs as follows: Attorney Gerry Webber completed 28.3 hours of work at a rate of $540 per hour for a total of $15,282; Attorney Craig Goodmark completed 26.6 hours of work at a rate of $435 per hour and paid the $400 filing fee for this case for a total of $11,705; Attorney Amith Gupta completed 38.2 hours of work at a rate of $250 per hour and accumulated $26 in postage and PACER costs for a total of $9,576; and Miko accumulated costs of service, including $215 for service of the summons and $900 for a private investigator to help effectuate service, for a total of $1,115.

Regarding these fees, Miko's unrefuted argument at the damages hearing was that the requested fees are justified for two reasons: (1) the default posture of this case was relatively unusual in counsel's experience requiring additional

research, and (2) his counsel tried to eliminate multiplicity of work. Considering counsel's experience and qualifications, the prevailing market rate in Atlanta for similar services by lawyers of reasonably comparable skills and experience, *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (citing *Norman* 836 F.2d at 1299), and the efforts counsel made to litigate this case expeditiously, the Court finds that the proposed fees are reasonable.

Regarding costs, two items give the Court pause. First, Miko is not entitled to collect the $26 for postage and unexplained "PACER" costs included in Attorney Gupta's invoice.[5] Miko's counsel does not sufficiently explain the purpose of these costs, and amounts merely incidental to trial or preparation for it are not considered necessary for purposes of Section 1920. *Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1996) (noting that costs for "computerized legal research" and "postage" are "clearly nonrecoverable" under Section 1920).

Second, while costs for private investigators are not covered under Section 1920 and there is an apparent split of authority in this Circuit regarding whether costs for private investigators are recoverable, *Diamond Heads, LLC v. Everingham*, 2011 WL 3269685, at *2 (M.D. Fla. July 29, 2011), the Court finds that the costs of

---

5   ECF 34-4, at 7.

the private investigator in this case were necessary to effect service of process after Jones refused to accept service of the complaint and summons and evaded attempts at service.[6] Costs of a private investigator to locate and serve on a dodging defendant are materially different from those paid to investigate the facts of a case in preparation for trial. Under these circumstances, the Court finds that Miko is entitled to recover $900 in costs for the private investigator. Thus, the Court concludes that Miko is entitled to $37,652 in costs and fees—the amount he requested less the postage and "PACER" costs.

---

[6]   ECF 34-1, at 1.

**IV.    Conclusion**

The Court **AWARDS** Miko $8,000 in damages and $37,652 in costs and fees. The Clerk is **DIRECTED** to enter judgment in favor of Miko and against Jones in the total amount of $45,652 and close this case.[7]

**SO ORDERED** this 17th day of January, 2023.

Steven D. Grimberg
United States District Court Judge

---

[7]   Undersigned regrets and apologizes to Miko and his counsel for the delay in entering this order on damages following the damages hearing in March 2022, which was due to the unanticipated press of other matters.