**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| TOMAS MIKO,<br>*Plaintiff*,<br><br>v.<br><br>REPRESENTATIVE VERNON JONES,<br>in his individual and official capacities,<br>*Defendant*. | CIVIL ACTION FILE<br>NO. 1-20-cv-02147-SDG |

**DECLARATION OF CARY WIGGINS**

I, Cary Wiggins, give the following testimony under penalty of perjury and based upon my personal knowledge and belief.

1. My name is Cary Wiggins. I am a founding partner of the law firm Wiggins Law Firm in Atlanta, Georgia.

2. I am also a member of the Bars of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, the United States District Courts for the Northern and Middle Districts of Georgia, and the Northern District of Florida.

3. I am the managing member of the law firm of Wiggins Law Group, and have been since 2004.

4. My practice has always focused primarily on First Amendment and

civil rights issues.

5. I have been an active member of the First Amendment Lawyers Association (FALA) since 1998. FALA is an invite-only organization of around 200 attorneys who have dedicated a substantial amount of their practice to advocating and protecting First Amendment rights. I am the past president of FALA.

6. My law practice is devoted principally to complex trial and appellate litigation, including civil rights litigation, and specifically cases involving claims under the First Amendment. Examples of civil rights cases that I have served as lead counsel include: Butler v. Smith, 85 F.4th 1102 (11th Cir. 2023); Flanigan's Enterprises, Inc. of Georgia v. City of Sandy Springs, 868 F.3d 1248 (11th Cir. 2017) (en banc); Perkins v. Thrasher, 701 F. App'x 887 (11th Cir. 2017); Tokyo Gwinnett, LLC v. Gwinnett Cty., 669 F. App'x 531 (11th Cir. 2016); Ducre v. Archer, 653 F. App'x 896 (11th Cir. 2016); Curves, LLC v. Spalding County, 685 F.3d 1284 (11th Cir. 2012); Mehta v. Foskey, 877 F. Supp. 2d 136 (S.D. Ga. 2012); This That & the Other Gift & Tobacco, Inc. v. Cobb County, 439 F.3d 1275 (11th Cir. 2006); Zibtluda, LLC v. Gwinnett County, Ga., 411 F.3d 1278 (11th Cir. 2005); Foxy Lady, Inc. v. City of Atlanta, 347 F.3d 1232 (11th Cir. 2003) For Your Eyes Alone, Inc v. City of Columbus, 281 F.3d 1209 (11th Cir. 2002); This

That And The Other Gift And Tobacco, Inc. v. Cobb County, 285 F.3d 1319 (11th Cir. 2002); and Flanigan's Enters. v. Fulton County, 242 F.3d 976 (11th Cir. 2001).

7. As part of my business and civil rights practice, I have written and lectured at continuing legal education seminars on a variety of topics, including First Amendment litigation, ethics and professionalism, civil rights issues, and attorney's fees. I am a contributing essayist to both the Encyclopedia of the First Amendment (John R. Vile, et al. ed. 2009) and the Encyclopedia of the Fourth Amendment (John R. Vile, et al. ed. 2012). I have also been a contributor to the American Bar Association's Developments in Administrative Law and Regulatory Practice for the years 2007-2009 (when I was the Chair of the ABA's Beverage Alcohol Committee). I have been invited to speak about constitutional litigation by various groups, including the State Bar of Georgia, Emory University School of Law, and FALA, to name a few. Based on some of my successes in civil rights cases, the Fulton County Daily Report selected me as one of "14 Under 40" in Georgia that were "On The Rise" in 2006.

8. During my practice of law, I have become familiar with the ethical rules and economics governing law practice, billing rates, billing practices, contingency fees, the cost and recovery of litigation support services and other

expenses of litigation, and the setting and collection of legal fees in a variety of circumstances, including cases presenting professional demands, factual and legal complexity, and the risk comparable to the instant case. I have derived this knowledge from personal experience negotiating fee agreements, billing and collecting fees and expenses from clients and/or adverse parties in the legal marketplace, and regularly representing plaintiffs and defendants on an hourly rate basis, a contingency basis, and under alternative fee arrangements. I have also derived this knowledge from responsibilities at my law firm, bar activities, practice experience, and research performed in support of CLE lecturing. I have been either lead or co-counsel in numerous civil rights cases.

9. My current standard hourly rate, based upon my eleven years of experience and the market demand for my legal services, is $475 for complex business and civil rights matters. I have numerous clients who pay me for my legal services on a monthly basis at this hourly rate. My hourly rate of $475 is within the range of the fair market value for an attorney who has comparable experience, reputation, and knowledge litigating complex matters in state and federal court.

10. I am familiar with the reputations and legal practice of Gerald Weber and his colleague, Craig Goodmark. I have also served as co-counsel with Mr. Goodmark and Mr. Weber. Among the Atlanta legal community, these attorneys

have excellent reputations for being highly skilled and knowledgeable in the area of civil rights litigation. Mr. Weber is perhaps the most renowned and accomplished litigator in the City of Atlanta for issues involving the First Amendment.

11. The current hourly rates sought ($560 an hour for Gerald Weber and $450 for Craig Goodmark) are well within the range of reasonable and fair market rates for counsel given their years of experience (Gerald Weber 33 years and Craig Goodmark 25 years) and their skill and knowledge in a specialized field of litigation such as federal civil rights litigation and First Amendment cases against public officials like Vernon Jones.

12. Prior to giving my testimony in this matter, I reviewed the docket in this case, the complaint and various other litigation filings and orders, and the statements of counsel including their timesheets. I also had various communications with plaintiff's counsel to confirm additional facts, such as the scope of the claims, the default judgment proceedings, the subsequent appeal to the U.S. Court of Appeals, and the efforts to enforce the judgement against the defendant.

13. I have reviewed the summary of plaintiff counsels' time entries and activities on this case, as well as the PACER docket report, Judge Grimsburg's Order

granting default judgment to Mr. Miko, the motions filed by Defendant Jones seeking relief from the judgment entered, the order denying that motion and the subsequent briefing for the appeal to this Court. I have reviewed the orders of this court as well. Based on my experience litigating plaintiff's employment and civil rights cases in federal district courts, including jury trials, I believe the time spent on the activities described is reasonable.

14. In my experience with civil rights litigation, particularly in cases against public officials, these types of cases are uniquely difficult to litigate, due to the many immunities/defenses available to state entities and their employees under both federal and state law, and because the law governing dispositive motions and jury instructions that often disfavor the plaintiff. In addition, cases involving the First Amendment and public forums often pose particularly complex legal issues that require the kind of specific experience held by Mr. Weber and Mr. Goodmark.

15. In this case, the Defendant's litigation tactics, including evading service, seeking the extraordinary relief under Rule 60(b), as well as the appeal to this Court, required plaintiff's counsel to dedicate substantial time to effectively represent their client and enforce the judgment entered against the defendant. These are uncommon issues requiring additional research and time.

16. Plaintiff selected the most economical path to resolution by pursuing preliminary injunctive relief and later seeking a default judgment when Defendant Jones refused to participate in the lawsuit. That successful strategy obviated the need for expensive discovery and led to an expedited outcome. The litigation then became protracted because of Defendant Jones who filed both an extraordinary motion after a judgment had been entered and then an appeal of the denial of that motion.

17. In this case, I understand that plaintiff's counsel expended time preparing and responding to motions in which they prevailed in the trial court. These motions were important to the expeditious resolution of the matter and a reasonable expenditure of time and effort. Counsel's time researching and drafting these motions helped educate the Court on the issues raised and and contributed to the attorneys' and the court's understanding of the issues before it.

18. Based on the First Amendment issues raised, the Defendant's tactical avoidance of service of process, the need for preliminary injunctive relief, and the motions filed in the case, as well as the experience and skill of the attorneys involved, it is my opinion that the hourly rates and the overall time and expense invested in this matter is reasonable and compensable. I did not observe any

obvious instances of overbilling or unnecessary time entries, and the time entries reflect an appropriate division of labor.

[signature on next page]

UPON PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES I SWEAR THAT THE FOREGOING FACTS ARE TRUE AND BASED ON MY PERSONAL KNOWLEDGE.

.DATED: This 12th day of February, 2024.

/s/ *Cary Wiggins*
Cary Wiggins